UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at PIKEVILLE

CIVIL ACTION NO. 7:09-CV-129-KKC

JACK BELCHER                                                               PLAINTIFF

v.                          **OPINION AND ORDER**

MICHAEL J. ASTRUE,
*Commissioner of Social Security*                                    DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on cross motions for summary judgment filed by Plaintiff Jack Belcher ("Belcher") and Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). [R. 10, 12]. For the reasons set forth below, the Court finds that the Commissioner's decision denying Belcher's claim for benefits is supported by substantial evidence in the record. As a result, the Commissioner's motion for summary judgment will be granted.

I.        FACTUAL AND PROCEDURAL BACKGROUND

Belcher filed an application for a period of disability and Disability Insurance Benefits ("DIB") on February 14, 2007. AR 89-91. Belcher worked as a coal miner from 1979 until 2002. AR 24, 127-28. In his application, Belcher alleged a period of disability beginning on April 15, 2005 due to back problems and pain in his neck and shoulders. AR 24, 89-91. The application was denied initially and on reconsideration. Belcher then filed a request for a hearing before an Administrative Law Judge ("ALJ") which was held on December 11, 2008. AR 11. On March 23, 2009, the ALJ issued an unfavorable decision denying Belcher's claim for benefits. AR 11-17.

Belcher then appealed the ALJ's decision to the Social Security Administration's Appeals Council which declined the request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210(a). Because Belcher has timely exhausted all available administrative remedies, this matter is now fit for review by this Court pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. DISCUSSION

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994).

This Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). A district court may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts

the ALJ's opinion as his own, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. App'x 503, 506 (6th Cir. 2005).

**B. Overview of the Process**

Under the Social Security Act, disability is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The disability determination is made by an ALJ using a five step sequential evaluation process. *See* 20 C.F.R. § 416.920. The claimant has the burden of proving the existence and severity of limitations caused by his impairment and that he is precluded from doing past relevant work for the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, the burden shifts to the Commissioner for the fifth step. *Id.*

At the first step, the claimant must show he is not currently engaging in substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(b). At the second step, the claimant must show that he suffers from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 404.1520(c). At the third step, a claimant must establish that his impairment or combination of impairments meets or medically equals a listed impairment. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526.

Before considering the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520(e). The RFC analyzes an individual's ability to do physical and mental work activities on a sustained basis despite any existing mental or physical impairments. In determining the RFC, the ALJ must consider all of the claimants

impairments, including those which are not severe. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Once the ALJ has determined the claimants RFC the inquiry proceeds to step four. At step four, the ALJ must determine whether the claimant can perform the requirements of his past relevant work. *See* 20 C.F.R. § 404.1520(f).

At the fifth step, the burden shifts to the Commissioner to establish that there is sufficient work in the national economy that the claimant can perform given his RFC, age, education and work experience. *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1512(g); 20 C.F.R. § 404.1560(c).

**C. The ALJ's Decision**

At step one, the ALJ found that Belcher did not engage in substantial gainful activity from the alleged onset date through December 31, 2007, the date last insured. AR 13. At step two, the ALJ found that Belcher had one severe impairment: degenerative disc disease of the cervical spine. *Id.* The ALJ found that Belcher did not suffer from a severe mental impairment. AR 13-14. At step three, the ALJ found that Belcher did not have an impairment or combination of impairments meeting or medically equaling a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 14. With regard to Belcher's musculoskeletal system, the ALJ determined that the examining and treating physician's reports did not show the neurological deficits required to meet Listing 1.04A. AR 14.

Prior to step four, the ALJ considered Belcher's RFC. After considering the evidence in the record, the ALJ found that Belcher had the RFC to:

perform light work[1] as defined in 20 C.F.R. § 404.1567(b) except he could never climb ladders, ropes, or scaffolds; he could occasionally crouch, crawl, read overhead with the left upper extremities, and push and pull with the left upper extremity.

AR 14.

In making the RFC determination, the ALJ found that Belcher's credibility as a witness was poor. AR 15. The decision also referenced a statement from Belcher's treating physician, Dr. Jensen on March 15, 2007 noting that all of Belcher's investigations were essentially normal except for blood glucose levels showing early diabetes. AR 15. Further, Dr. Jensen stated that "I have reassured him that I have not been able to find anything of a sinister or operable nature, and that weight loss was the thing which would be most likely to be helpful for him." *Id.* The ALJ also rejected the opinion of Dr. Huffnagle, an examining physician which was rendered on September 20, 2007. The ALJ found that Dr. Huffnagle's assessment that Belcher was limited to a range of sedentary work was inconsistent with Belcher's treatment history and objective medical findings in the record. AR 15. Finally, the ALJ relied on the opinions of state agency non-examining physicians who opined that Belcher could perform a range of light work. AR 278-88, 289-96, 356-63.

At step four, the ALJ then determined that Belcher was unable to perform his past relevant work as a coal miner. AR 16. This finding was based on the listing of coal mining as

---

[1] According to Social Security Regulations:

[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

5

heavy to very heavy work. *Id.* At step five, the ALJ then found that through the date last insured, considering Belcher's age, education, past work experience and RFC, there were other jobs existing in significant numbers in the national economy that he could perform. *Id.* In support of this finding, the ALJ relied on testimony by a vocational expert ("VE"). AR 16-17. The VE testified that somebody with Belcher's RFC could perform jobs at the light exertional level including product packager, nursery and greenhouse worker. AR 32-33. Based on the above findings, the ALJ determined that Belcher was not disabled as defined under sections 216(i) and 223(d) of the Social Security Act through the date last insured. AR 17.

**D. Analysis**

Belcher only raises one argument on appeal. He asserts that the ALJ erred by acting as his own medical expert in rejecting the opinion of Dr. Huffnagle who is a certified orthopedic surgeon. AR 390-397. Consequently, the Court's review is limited to this issue and Belcher is deemed to have conceded all other findings that have not been specifically challenged. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)(explaining that the reviewing court is not required "to formulate arguments on" a claimants behalf but may limit its "consideration to the particular points that Hollon appears to raise in her brief on appeal."); *Griffie v. Astrue*, No. 09-12-ART, 2009 U.S. Dist. LEXIS 104527, at *8, 2009 WL 3672507, at *3 (E.D. Ky. Nov. 2, 2009)("The Court has no obligation to search the record to develop and support of the arguments of the parties...[r]ather, the Court's review is limited to the specific issues the parties raise.").

Dr. Huffnagle was a one time consultative examiner who performed a physical examination of Belcher on September 20, 2007. AR 390-97. In terms of Belcher's musculoskeletal system, Dr. Huffnagle observed that Belcher's:

neck tilted and turned towards the left. His cervical range of motion is 28 degrees of flexion, 10 degrees extension, 5 degrees right lateral bending, and 0 degrees of left lateral bending. His lumbar range of motion is 12 degrees of flexion, 0 degrees of extension, 2 degrees of right lateral bending, and dn 3 degrees of left lateral bending. He cannot abduct or flex or rotate the right shoulder.

AR 392. Huffnagle also performed a neurologic exam and found that Belcher's:

Romberg test is positive. He cannot walk on his heels or his toes. His gait is limited, slow and deliberate. His Jamar test is 10 kg on the right and 20 kg on the left. His biceps, triceps, and radial reflexes are all 1+. The knee and ankle reflexes are 0. His hamstrings are tight. His Lasegue's sign is negative....He has no particular sensory deficit.

*Id.* Based on these findings, Dr. Huffnagle gave an impression of torticollis,[2] chronic low back pain and question of impingement syndrome of the right shoulder. *Id.*

Dr. Huffnagle then filled out a "Physical Medical Assessment" form indicating that Belcher's ability to lift/carry[3] and stand/walk[4] were affected by his impairments. AR 394. Dr. Huffnagle opined that Belcher's impairments limited him to sitting for three hours during an eight hour workday with no more than one hour without interruption. AR 395. In terms of postural activities, Dr. Huffnagle opined that Belcher should never climb or crawl, could frequently stoop, crouch, or kneel, and could constantly balance. *Id.* In terms of physical functions, he opined that Belcher should never push/pull, could occasionally reach and frequently handle. AR 396. Finally, considering environmental activities/conditions, Dr. Huffnagle stated that Belcher should never be around moving machinery and only occasionally be around heights

---

[2] Torticollis is "wryneck" or "a contracted state of the cervical muscles, producing twisting of the neck and an unnatural position of the head." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1621(25th ed. 1974).

[3] Huffnagle opined that Belcher could lift ten pounds occasionally and five pounds frequently. AR 394.

[4] Huffnagle opined that Belcher can stand and/or walk for 3 hours in an 8-hour workday and up to thirty minutes without interruption. AR 394.

7

and vibration. AR 397.

Due to the fact that Dr. Huffnagle only examined Belcher one time, he is not considered a treating physician,[5] the treating source rules do not apply, and his opinion is not entitled to controlling weight or any special level of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)(explaining that because the physician "examined Mr. Barker on only one occasion, and the rationale of the treating physician doctrine simply does not apply here...[the] report was entitled to no special degree of deference.").

In reviewing the ALJ's decision, it is clear that he considered Dr. Huffnagle's opinion, as he was required to do. The ALJ also gave several reasons for why he was giving the opinion little consideration. While the ALJ recognized that Belcher has a history of treatment for his neck pain, his decision referenced an MRI of the cervical spine performed in February 2007 showing only mild degenerative changes at the C5/C6 level. AR 270. In addition, the ALJ noted that Dr. Jensen, Belcher's treating physician, noted that clinical examinations showed "no signs of spinal cord or nerve root compression, and the MRI shows only some minor degenerative changes consistent with his age." AR 271.

The ALJ also considered an MRI of the right shoulder from November 12, 2007 showing a small partial thickness tear at the anterior supraspinatas cuff insertion. AR 408. However, during a physical exam by Dr. Northrip on April 3, 2007, range of motion of the upper extremities was essentially normal in the right shoulder and only mildly limited in the left

---

[5] A physician qualifies as a treating physician if the claimant sees him "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. Physicians that are seen infrequently can only be considered treating sources "if the nature and frequency of the treatment or evaluation is typical for [the] condition." *Id.*

shoulder. AR 282. The ALJ also relied on a statement by Belcher's treating physician on March 15, 2007 that all of his findings were essentially normal and that weight loss was most likely to help him.

The ALJ's hearing decision also indicates that Dr. Huffnagle's opinion was inconsistent with other medical opinions in the record. Dr. Swan reviewed Belcher's medical records on April 19, 2007 and noted that x-rays of the cervical spine and a CT scan performed shortly after Belcher was injured in 1998 were essentially normal. AR 290. Dr. Swan further indicated that Belcher did not receive further therapy or seek additional treatment for this injury until early 2007. AR 291. Based on his review of the medical evidence, Dr. Swan opined that Belcher could stand and/or walk for about six hours and sit for about six hours during an ordinary workday. AR 290. Dr. Saranga who reviewed Belcher's medical records and Dr. Swan's findings on July 11, 2007 noted that the new medical evidence received did not appear to alter the prior assessment and affirmed Dr. Swan's prior RFC findings. AR 356-63.

Belcher alleges that the ALJ erred by accepting the opinions of these non-examining sources, which he claims were based on incomplete records, over Dr. Huffnagle's opinion which resulted from a physical examination and was based on a complete review of the record. Plaintiff also alleges that the ALJ was not qualified to accept the opinions of the non-examining physicians over Dr. Huffnagle's opinion because Huffnagle's opinion was more recently rendered and asserts that the ALJ essentially "played doctor" in making the RFC determination. In reviewing the evidence in the record, the Court finds that the ALJ did not err in giving little consideration to Dr. Huffnagle's medical assessment. Furthermore, the Court finds that the ALJ's RFC finding is supported by substantial evidence.

9

According to Social Security Ruling 96-5p, 1996 SSR LEXIS 2, *13, 1996 WL 374183, "a medical source statement must not be equated with the administrative finding known as the RFC assessment." While "the overall RFC assessment is an administrative finding on an issue reserved to the Commissioner, the adjudicator must nevertheless adopt in that assessment any treating source medical opinion...to which the adjudicator has given controlling weight under the rules in 20 CFR 404.1527(d)(2) and 416.927(d)(2)." *Id.* at *14. In this case, the ALJ was presented with conflicting evidence from several examining and non-examining sources which he had to consider in determining Belcher's RFC. Belcher has not directed the Court's attention to any medical source statement that the ALJ was required to give controlling weight to.

The ALJ is entrusted with the responsibility for resolving conflicts in the evidence. On the other hand, this Court must only look to whether substantial evidence supports the ALJ's decision. *See* 20 C.F.R. §§ 416.927, 416.929; *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234-35 (6th Cir. 1993). Here, the ALJ found that Dr. Huffnagle's assessment was inconsistent with the objective medical evidence in the record. Furthermore, he determined that the opinion was inconsistent with the state agency non-examining physicians' opinions discussed above indicating that Belcher could perform light work. Finally, the Court notes that Dr. Huffnagle's opinion is also inconsistent with the consultative examination performed by Dr. Herr. AR 414-427. Despite the fact that Dr. Herr was retained by Belcher's attorney, his report asserts that "Dr. Huffnagle's report is not consistent with Mr. Belcher's medical records." AR 416. While Dr. Herr found that Belcher's ability to perform work related activities was limited by his physical problems, Belcher concedes that "when the vocational expert was given the limits contained in Dr. Herr's medical assessment the Plaintiff remained able to perform the sedentary

jobs provided by the vocational expert."[6]

In light of all of the evidence in the record, the Court finds that the ALJ did not improperly play doctor in giving little weight to Dr. Huffnagle's opinion. Rather, the ALJ found that this opinion and the limitations imposed by Dr. Huffnagle were inconsistent with the medical evidence in the record, as well as with the medical assessments of state agency non-examining physicians. Furthermore, the Court notes that Dr. Huffnagle's medical assessment is inconsistent with the medical assessment of Dr. Herr who also examined Belcher. In reviewing all of the evidence in the record, the ALJ was required to resolve the conflicts in the evidence to determine Belcher's RFC. The Court finds that the ALJ's RFC determination and rejection of Dr. Huffnagle's opinion is supported by substantial evidence in the record.

## III. CONCLUSION

For the reasons set forth above, it is **HEREBY ORDERED THAT**:

(1) Plaintiff's motion for summary judgment [R. 10] is **DENIED;**

(2) Defendant's motion for summary judgment [R. 12] is **GRANTED;** and

(3) **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

Dated this 23rd day of April, 2010.



**Signed By:**
*Karen K. Caldwell*
**United States District Judge**

---

[6] Rec. 10, Belcher's MSJ at 5 n.3.